## CIRCUIT COURT OF WISE COUNTY

Iris Hope Deary

    v.

Ray D. Pethtel, Commissioner,
Department of Transportation

September 18, 1987

By JUDGE ROBERT T. WINSTON, JR.

    The defendant has raised two principal defenses. The first defense is the common law doctrine that surface water is a common enemy. The second defense is the statute of limitations.

    Mrs. Deary testified that since the highway work above her property she has had problems of increased water being brought onto her property from the disturbed area. She also testified about siltation in the stream, that the ditches fill up with sediment and that rock and sediment has been cast upon her property.

    She was corroborated by her husband Mr. Deary. She also offered in evidence an engineer, Don Jack Mullins.

    Mr. Mullins's testimony was to the effect that more water is being released from the disturbed area because of the "scalping" of the area. He testified that the "scalping" decreases the amount of surface water that is absorbed in the land and causes about three times as much runoff. He estimated that about thirty acres of the upper drainage area is contributing to the runoff.

    Mr. Harmon testified for the defendant. He testified that six acres in the upper drainage area was disturbed resulting in an increase runoff. He further testified

that the increase runoff by the time it reaches the Deary property was about ten percent.

Virginia follows the modified common law rule as to surface water. This rule is set out in *Norfolk & Western Railway Company v. Carter*, 91 Va. 587, 22 S.E. 517 (1895). It is also discussed in the more recent cases of *Third Buckingham Community v. Anderson*, 178 Va. 478 (1941), and *Hodges Manor Corp. v. Mayflower Park Corp.*, 197 Va. 344 (1955).

These three cases recognize exceptions to the common enemy rule and as noted in the *Third Buckingham Case*:

> The right, thus modified, has also its exceptions. One exception is that the owner of land cannot collect the water into an artificial channel or volume and pour it upon the land of another, to his injury.

The estimates of the expert witnesses vary as to the increase in volume caused by the "scalping" of the surface, but all of the evidence indicates some increase. I therefore find that since there has been an increase in the volume of water that goes upon the Deary property, caused by the "scalping" of the land, then there is an artificial volume of water being poured upon the Deary property. Mrs. Deary's claim is not barred by the common enemy rule but comes within the exception.

### Statute of Limitations

This action is an inverse condemnation case. Under the authority of *Prendergast v. Park Authority*, 227 Va. 190 (1984), these actions are based upon an implied contract and are subject to a three year statute of limitations.

The question in this case is when Mrs. Deary's cause of action accrued.

Mrs. Deary in her testimony complained of an increased water problem, of siltation and the fact that her ditches fill up with sediment and rock. She also complained of rocks and sediment being cast upon her land.

She testified that in the 1960s she had no problem, but that there has been a gradual increase over the past few years. In 1981 she really began to notice it. She

also testified that there has been a large increase in the last three or four years. She testified that before 1980 the stream was not large.

Mr. Deary testified that the problem became substantially worse since 1980. He stated that it steadily got worse and that since 1984 he has reseeded his property three times. He testified about a continually increasing water flow. He advised his wife in the fall of 1980 and spring of 1981 and in 1982 that she should have someone check it.

He testified he went on the property with Mr. Shupe to look at areas to put fill material. He emphasized to Mr. Shupe that there would be no possibility whatsoever (of a fill agreement) until the drainage problems were taken care of.

Jessie Shupe testified for the defendant. He stated that in April 1982 they began filling operations to place an embankment above the Deary's. He testified also that a pipe was put in in July 27 and 28, 1982. He contacted Mr. Deary in November (1982) regarding the need for a waste area and walked over the property. He met again with the Dearys in March 1983. On April 15, 1983, he terminated negotiations.

This case is based upon nuisance, and the evidence indicates that the highway work and alteration of the surface is a permanent nuisance. In 14A Michie's Jurisprudence, page 57: "Where there is a permanent nuisance, the consequences of which in the normal course of things will continue indefinitely, there can be but a single action therefor and the entire damage suffered, both past and future, must be recovered in the action."

This section cites *Southern Railway Company v. McMenamin*, 113 Va. 121, 73 S.E. 980 (1912). This case indicates that the statute of limitation will not be extended simply because the damage is much larger in later years than it was when the structures were first erected. The time of the running of the statute is still to be computed from the time the single right of action accrued. I note also *Virginia Hot Springs Company v. McCray*, 106 Va. 461, 56 S.E. 216 (1907), citing an Arkansas Case:

In St. Louis, etc., Ry. Co. v. Biggs (Ark.) 12 S.W. 331, 6 L.R.A. 804, 20 Am. St. Rep. 174,

the Supreme Court of Arkansas cites a number of authorities for the rule, there followed, that "wherever the nuisance is of a permanent character, and its construction and continuance are necessarily an injury, the damage is original, and may be at once fully compensated. In such case the statute of limitations begins to run from the construction of the nuisance."

In *Eshbaugh v. Amoco Oil Co.*, 4 V.L.R. 456, 234 Va. 74 (1987): "A right of action accrues when *any* damage, however slight, is sustained." *Stone v. Ethan Allen, Inc.*, 232 Va. 365, 369, 350 S.E.2d 629, 632 (1986).

I note from plaintiff's evidence that the problem (nuisance) became sufficiently serious in the spring of 1981 or 1982 for Mr. Deary to advise his wife to have someone check on it. In late 1982 or March 1983, Mr. Deary indicated a drainage problem on Mr. Shupe's visit.

I therefore find that Mrs. Deary's right of action accrued in 1981 or 1982 and that her suit which was filed in May 1986 is therefore barred by the statute of limitations.